IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION NO. 5:23-CV-00155-KDB-DCK

| | |
|---|---|
| MARY SIGMON,<br><br>Plaintiff,<br><br>v.<br><br>DON BROWN, MICHAEL SPEAGLE AND ADAM STOUT,<br><br>Defendants. | ORDER |

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 12). The Court has carefully considered this motion, the parties' briefs and exhibits and oral argument on the motion from the parties' counsel on October 15, 2024. For the reasons discussed briefly below and in Defendants' supporting memoranda, the Court will **GRANT** the motion.

### I. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *United States v. 8.929 Acres of Land in Arlington Cnty., Virginia*, 36 F.4th 240, 252 (4th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)); *see United States, f/u/b Modern Mosaic, LTD v. Turner Construction Co., et al.*, 946 F.3d 201, 206 (4th Cir. 2019). A factual dispute is considered genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *8.929 Acres of Land,* 36 F.4th at 252. "A fact is material if it might affect the outcome of the suit under the governing law." *Id.* (quoting *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013)).

1

The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact through citations to the pleadings, depositions, answers to interrogatories, admissions, or affidavits in the record. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (when the nonmoving party "has failed to make a sufficient showing on an essential element of [his] claim with respect to which [he] has the burden of proof," summary judgment is warranted); *United States ex rel. Gugenheim v. Meridian Senior Living, LLC*, 36 F.4th 173, 178 (4th Cir. 2022). If the movant satisfies his initial burden to demonstrate "an absence of evidence to support the nonmoving party's case," the burden shifts to the nonmovant to "present specific facts showing that there is a genuine issue for trial." *8.929 Acres of Land,* 36 F.4th at 252, quoting *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015). "The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Hixson v. Moran*, 1 F.4th 297, 302 (4th Cir. 2021). Rather, the nonmoving party must establish that a material fact is genuinely disputed by, *inter alia*, "citing to particular parts of the materials of record" and cannot rely only on "conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." Fed. R. Civ. P. 56(c)(1)(A); *8.929 Acres of Land,* 36 F.4th at 252, quoting *Dash v. Mayweather*, 731 F.3d 303, 311 (4th Cir. 2013).

Still, summary judgment is not intended to be a substitute for a trial of the facts. *Anderson*, 477 U.S. at 249. In determining if summary judgment is appropriate, "courts must view the evidence in the light most favorable to the nonmoving party and refrain from weigh[ing] the evidence or mak[ing] credibility determinations." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (internal quotation marks omitted) (quoting *Lee v. Town of Seaboard*, 863 F.3d 323, 327 (4th Cir. 2017). "Summary judgment cannot be granted merely

because the court believes that the movant will prevail if the action is tried on the merits." *Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 568-69 (4th Cir. 2015) (quoting 10A Charles Alan Wright & Arthur R. Miller et al., Federal Practice & Procedure § 2728 (3d ed.1998)). In the end, the relevant inquiry on summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## II. FACTS AND PROCEDURAL HISTORY

On July 22, 2017, Plaintiff Mary Sigmon was suicidal and had not slept in 13 days following her difficult decision to take her sister off of life support (which prompted family anger, including her nephew telling her to kill herself). She had threatened suicide two days earlier and left a Facebook post saying she was "done" and said "goodbye." In response to these alarming circumstances, Plaintiff's daughter requested that the Catawba County (NC) Sheriff's Office make a "welfare check" on Plaintiff.[1] Defendant Sheriff's Deputies Speagle and Stout (the "Deputies") were dispatched to respond to the call.

When the Deputies arrived at Plaintiff's home, they announced themselves and knocked on the door and the windows until, after some time, Plaintiff answered the door. They told Plaintiff that they were there to conduct a welfare check and she "opened the door and let [them] in." (Doc. No. 13-1 at 151). The Deputies then talked to Plaintiff about her mental state and the Facebook post. She admitted being depressed and writing the post, but initially refused to go to the hospital for a mental health examination. Ultimately, after Deputy Stout told Plaintiff that he and her family were concerned she may harm herself, Plaintiff agreed to go to the hospital.

---

[1] Deputy Stout viewed and confirmed the content of the Plaintiff's Facebook post prior to conducting the welfare check.

Deputy Stout called an ambulance. While they were waiting for it to arrive, Plaintiff asked to change clothes. The Deputies told Plaintiff that was unnecessary, but if she wanted to do so, she could not close the door for both her personal safety and the Deputies' safety. Plaintiff then changed clothes for ten minutes with Deputy Speagle standing outside of her open door. Plaintiff also went to the bathroom, where she stayed for approximately 15-20 minutes and made multiple phone calls while the door was ajar.

When the ambulance arrived, Plaintiff went with EMS (without the Deputies) to Frye Regional Medical Center, where she was transferred to Frye South Campus. After evaluation, Plaintiff was involuntarily committed for four days. The Deputies did not go with Plaintiff to the hospital, nor did they play any role in her psychiatric examination or commitment.

Plaintiff filed this action against the Deputies and Don Brown, the current Sheriff of Catawba County (who was not in that position in 2017), on June 25, 2023, in the Catawba County Superior Court. (Doc. No. 1-1). The case was timely removed to this Court, an Answer was filed, and the parties pursued discovery. Defendants filed their Motion for Summary Judgment on September 6, 2024, seeking judgment in their favor on all of Plaintiff's federal and state claims arising out of the circumstances described above. The motion has been fully briefed and the parties have had the opportunity to address the Court at oral argument. It is now ripe for the Court's decision.

### III. DISCUSSION

In addition to responding to threats of criminal activity, law enforcement officers are also called upon to provide important "community caretaking" services as part of their efforts to protect citizens from harm, including to prevent suicides. *See Caniglia v. Strom*, 593 U.S. 194, 205 (2021) (Kavanaugh, J. concurring); *Brigham City v. Stuart*, 547 U.S. 398, 406 (2006) ("[t]he role of a

4

peace officer includes preventing violence and restoring order, not simply rendering first aid to casualties."). While the scope of law enforcement's constitutional obligations and protections in pursuing this critical (and often dangerous) work is sometimes debated – at least doctrinally if not in substance – the law clearly shields officers from liability when they act "reasonably," and thereby "lawfully." *See Caniglia*, 593 U.S. at 198-201, 204-205. (Supreme Court unanimously limiting "community caretaking" exception to the Fourth Amendment, while emphasizing that many law enforcement encounters involving community services will be reasonable and lawful).

Here, it is abundantly clear that the Deputies acted reasonably and that no jury could find their conduct to be unlawful. They were called to respond to a woman who was clearly in emotional distress and had threatened suicide. Then, with probable cause to conduct a mental health assessment, they entered her home with her consent (even if she incorrectly believed that she could not refuse their request) and briefly monitored her[2] to prevent her from harming herself before an ambulance arrived to take her to the hospital where she was involuntarily committed by medical personnel for four days. While the Court does not minimize the discomfort that Plaintiff says she experienced during the encounter, her subjective feelings do not create any constitutional error where she fails to identify any action of the Deputies that was objectively unreasonable. *See Bailey v. Kennedy*, 349 F. 3d. 731 (2003) (stating that the test in evaluating an officer's conduct pertaining to mental health issues is based upon what an objectively reasonable officer would have understood in those circumstances). Indeed, had the Deputies allowed her to dress, etc. in privacy and she had killed herself as she had previously threatened to do, then the Deputies would surely

---

[2] Plaintiff does not dispute that she was told prior to changing clothes and using the restroom that she would need to leave the door open if she chose to do so. Therefore, the circumstance of being watched (for her own benefit and the safety of the officers) was ultimately of her own making.

have been questioned as to why they had not prevented that tragedy (which Plaintiff's counsel confirmed at oral argument).

Moreover, despite her insistence that she was "fine" when the Deputies came to her house, it is undisputed that immediately following their visit she was involuntarily committed for several days after she arrived at the hospital. In summary, there are no facts from which a reasonable jury could find that the Deputies failed in their mission to protect Plaintiff from harm, much less committed a constitutional error. Therefore, Defendants are entitled to summary judgment on Plaintiff's claims under Section 1983, all of which require a finding of constitutional error in the Deputies' conduct.[3] *See Evans v. Chalmers*, 703 F.3d 636, 654 (4th Cir. 2012) (constitutional claims arising under 42 U.S.C. § 1983 "require a predicate constitutional violation to proceed" because "supervisors and municipalities cannot be liable under § 1983 without some predicate 'constitutional injury at the hands of the individual [state] officer,' at least in suits for damages.").

In addition to Plaintiff's claims under federal law, she asserts numerous claims under North Carolina law for emotional distress, trespass, civil assault and punitive damages (which is a claim for relief rather than an independent substantive claim). For the reasons well explained in Defendants' briefs, Plaintiff falls far short of establishing facts from which a reasonable jury could find in her favor on any of her state law claims. Simply put, as described above, there is no evidence that the Deputies did anything improper or unlawful; rather, at the request of Plaintiff's daughter they tried and succeeded in helping Plaintiff to get the mental health care she needed to save her

---

[3] Further, for the reasons discussed in Defendants' briefs, Plaintiff's "official capacity" and *Monell* claims are unsupported by evidence of any unlawful official policy, custom or practice, or supervisory liability for an unspecified failure to train in addition to the absence of an underlying constitutional wrong. Indeed, Plaintiff's counsel "conceded" that the *Monell* claims lacked sufficient support at oral argument.

6

Case 5:23-cv-00155-KDB-DCK    Document 16    Filed 10/16/24    Page 6 of 7

life (with their unfortunate recompense being this lawsuit). Therefore, the Court will also grant summary judgment to the Defendants on Plaintiff's state law claims.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

1. Defendants' Motion for Summary Judgment (Doc. No. 12) is **GRANTED;** and
2. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: October 16, 2024

Kenneth D. Bell
United States District Judge